UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
—————————————————————X

JEFFREY KAYE,

               Petitioner,              **MEMORANDUM & ORDER**

    -against-                      24-cv-2478 (NRM)

THOMAS T. McGUINNESS, *Superintendent of Shawangunk Correctional Facility*,

               Respondent.
—————————————————————X

**NINA R. MORRISON**, United States District Judge:

Petitioner Jeffrey Kaye brings this petition for a writ of habeas corpus against Thomas McGuinness,[1] Superintendent of the Shawangunk Correctional Facility, pursuant to 28 U.S.C. § 2254. Kaye alleges that his 2019 sentence in New York State court was imposed in violation of his rights under the United States Constitution. For the reasons outlined below, Kaye's petition is denied. However, the Court grants Kaye a certificate of appealability with respect to his claim that his sentence was tainted by constitutionally impermissible vindictiveness on the part of the sentencing court.

---

[1] Kaye misspelled the last name of Respondent Thomas McGuinness, *see generally Paige v. McGuinness*, 227 N.Y.S.3d 815 (N.Y. App. Div. 2025) (indicating that "Thomas McGuinness" was the Superintendent of Shawangunk Correctional Facility in 2024), as "McGunnes" in the petition. Subsequent filings by Kaye indicate that "McGuinness" is the proper and intended spelling. *See* ECF No. 13 (using "McGuinness" throughout). The Clerk of Court creates case captions based on how petitioners stylize the parties' names in initial filings. *Sua sponte*, the Court respectfully directs the Clerk of Court to amend the caption to reflect the accurate spelling of Respondent's last name. *Choudhary v. Donohoue*, No. 14-CV-4500 (SJF), 2014 WL 6389641, at *1 n.1 (E.D.N.Y. Nov. 14, 2014).

## FACTS AND PROCEDURAL HISTORY

### I.    2000 Guilty Plea

In 2000, Petitioner Jeffrey Kaye pled guilty in Queens County Criminal Court to one count of endangering the welfare of a child, a misdemeanor.  Sent'g Tr. dated June 12, 2000 ("2000 Sent'g Tr.") at 3:9–5:5, ECF No. 10-8.[2]  The People dismissed additional felony charges for purposes of disposition at the sentencing.  *Id.* at 2:22–24.  The court sentenced Kaye to a three-year period of probation and required that he satisfy other conditions, including (1) complete "the CAPS behavioral program";[3] (2) comply with a three-year order of protection; and (3) relinquish his New York State teaching license.  *Id.* at 4:8–15.  Kaye admitted that, in the year 2000, "in the County of Queens, [he] committed the crime of endangering the welfare of a child, when [he] knowingly acted in a manner likely to be injurious to the physical, mental or moral welfare of a child less than seventeen years old."  *Id.*  at 4:17–25.  Kaye's counsel waived further plea allocution.  *Id.* at 5:6–8.

### II.    2013 State Court Conviction and Initial Sentencing

Kaye was arrested in 2011 and stood trial in Kings County Supreme Court between January 29 and February 8, 2013, for crimes that he committed against several students at the tutoring center where he worked.  *See generally* Tr. of Trial at 1–386 ("Trial Tr. 1"), ECF No. 10-3; Tr. of Trial at 387–853 ("Trial Tr. 2"), ECF No.

---

[2] References to court transcripts use internal pages and lines, not ECF pagination.

[3] Kaye's counsel subsequently characterized the "CAPS program or CAPS treatment" as "treatment pertaining to sexual offenders."  Sent'g Tr. dated Apr. 8, 2019 ("2019 Sent'g Tr.") at 4:4–6, ECF No. 10-7.

10-4; Tr. of Trial at 854–1114 (Trial Tr. 3"), ECF No. 10-5.  The jury convicted Kaye of (1) one count of second-degree course of sexual conduct against a child; (2) four counts of first-degree sexual abuse; and (3) one count of third-degree sexual abuse. Trial Tr. 3 at 1109:10–1111:21.  The jury acquitted Kaye of (1) two counts of first-degree sexual abuse; (2) one count of forcible touching; and (3) one count of third-degree sexual abuse.  *Id.*

Kings County Supreme Court Justice Michael A. Gary, who had presided over the jury trial, sentenced Kaye on March 21, 2013.  Sent'g Tr. dated Mar. 21, 2013 ("2013 Sent'g Tr."), ECF No. 10-6.  The court noted that Kaye's counsel had received the pre-sentence report, and counsel stated no objection.  *Id.* at 2:9–12.  Kaye was permitted to address the court following his counsel's statement.  *Id.* at 7:10–13:15. The court noted that it had reviewed submissions from both parties and the Department of Probation, as well as the minutes of certain testimony from the trial. *Id.* at 13:19–14:4.

The court also noted that it had independently researched and considered materials relating to Kaye's 2000 arrest and guilty plea to one count of endangering the welfare of a child.  *Id.* at 17:20–18:18.  The court stated that the pre-sentence report from the Department of Probation included additional information about the arrest, specifically that the charges related to an allegation that Kaye "touch[ed] the testicles of a small child."  *Id.* at 18:14–18.  The court characterized the 2000 guilty plea as Kaye "admitt[ing] that [he] personally had molested a child."  2013 Sent'g Tr. at 19:24–20:1.  The court further stated that "[t]he probation report . . . describe[d]

[Kaye] as a predatory pedophile," *id.* at 19:21–23, and noted that "the probation department, in its sentence recommendation, states prison is strongly recommended," *id.* at 23:11–13. The court also stated:

> So let's get on to the issue of sentencing, where you asked me for mercy. And I remind you, Mr. Kaye, way back when this case was sent to me for trial, we discussed mercy, and I said to you, Mr. Kaye, on the issue of mercy I would offer you a sentence of 10 years to spare these children from having to go forward, and to testify in open court in front of strangers about what happened to them and you rejected that, so mercy is by the boards, Mr. Kaye.

*Id.* at 19:12–20.

The court proceeded to sentence Kaye to seven-year terms of incarceration for the second-degree course of sexual conduct against a child conviction and for each of the four first-degree sexual abuse convictions. *Id.* at 23:14–24:25. The court also sentenced Kaye to a 90-day term for the third-degree sexual abuse conviction, noting that Kaye had already served that time. *Id.* at 25:1–5. The court sentenced Kaye to serve each of these terms consecutively, totaling 35 years in aggregate. 2013 Sent'g Tr. at 25:6–7. The court also sentenced Kaye to 10 years of post-release supervision. *Id.* at 27:21–25. Finally, the court stated:

> Maybe, Mr. Kaye, you can find some atonement for your actions. You are a great teacher, you told the jury that, everyone said it. You'll be in a position where you can teach a number of people. And, Mr. Kaye, when you get out, I'll be dead, but at least I'm satisfied knowing that the only place for you to go would be a retirement community or a nursing home, someplace where there [are] certainly no children around.

*Id.* at 25:13–21.

### III.    Kaye's Direct Appeal of the 2013 Conviction and Initial Sentence

Kaye timely appealed his conviction to the Appellate Division, Second Department, and the court granted Kaye leave to appear as a poor person and appointed appellate counsel on June 26, 2013.  Pet'r Br. on First Direct Appeal ("Pet'r First Appeal Br.") at 8, ECF 10-9.[4]  Appellate counsel filed Kaye's direct appeal brief on July 10, 2015.  *See generally* Pet'r First Appeal Br.  The first direct appeal raised four grounds for relief: (1) the trial court denied Kaye his rights to present a defense and a fair trial when it precluded one false confession expert's testimony and limited the testimony of another expert, *id.* at 49–67; (2) at the pre-trial *Huntley* hearing, the trial court erred in precluding the defense from cross-examining one detective-witness about interrogation techniques used during Kaye's initial interview, precluding the defense from calling another detective-witness, and ultimately denying Kaye's motion to suppress, *id.* at 68–76; (3) the trial court violated Kaye's due process rights by refusing to sever certain charges and refusing to charge the jury not to commingle evidence, *id.* at 76–85; and (4) two of the first-degree sexual abuse charges were duplicative because they concerned the same victim in a single incident, *id.* at 85–90.

On October 27, 2015, the People filed its brief on direct appeal.  Pros. Br. on First Direct Appeal, ECF 10-10.  The People argued that Kaye's arguments were either unpreserved or meritless, *see generally id.*, though it conceded that the two counts of first-degree sexual abuse should run concurrently, *id.* at 106.

---

[4] Page references use ECF pagination unless otherwise noted.

Kaye's direct appeal produced a decision in the Second Department. *People v. Kaye*, 26 N.Y.S.3d 593 (N.Y. App. Div. 2016). The court (1) rejected Kaye's exception as to the suppression of evidence; (2) rejected Kaye's exception as to the pre-trial *Huntley* hearing; (3) rejected Kaye's exception as to expert testimony; (4) rejected Kaye's exception as to severance; (5) held that the trial court erred in failing to charge the jury not to commingle evidence, but concluded this error was harmless because there was overwhelming evidence of guilt; and (6) concluded Kaye had failed to preserve the exception as to the multiplicitous counts of the indictment but decided to reach the issue in the exercise of its interest-of-justice jurisdiction and modify the judgment so that the sentences for those two convictions would run concurrently, meaning Kaye's adjusted sentence totaled 28 years and 90 days. *Id.* The Court of Appeals denied Kaye leave to appeal on September 19, 2016. *People v. Kaye*, 28 N.Y.3d 971 (N.Y. 2016).

## IV. Kaye's Collateral Appeals of the 2013 Conviction and Initial Sentence

In July 2017, following the Second Department's decision on direct appeal, Kaye, proceeding *pro se*, filed a motion pursuant to N.Y. Crim. Proc. L. § 440.10 to vacate the judgment in his 2013 trial. Pet'r Mot. to Vacate J. ("Pet'r First 440.10 Mot."), ECF 10-16. In this motion, Kaye argued that: (1) he was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution, Article I, Section 6 of the New York State Constitution, and New York law; (2) evidence used at trial was obtained in violation of his rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States

Constitution, Article I, Section 6 of the New York State Constitution, and New York law; (3) evidence that resulted in his conviction was false and was known to be false by the prosecutor or court prior to entry of the judgment; (4) the indictments against him were defective and should be dismissed under New York law; (5) the grand juries that indicted him were defective because he did not have the opportunity to appear before them, contrary to New York law; (6) the court abused its discretion in violation of his due process rights; and (7) the court erred when it precluded and limited expert testimony in his defense. *Id.* at 6–7. Kaye also filed an addendum to his motion in August 2017, in which he reiterated several arguments relating to the grand juries that indicted him and further argued that (8) his counsel was ineffective in advising him as to the plea bargains he was offered. *Id.* at 103–16.

The People filed a response to Kaye's Section 440.10 motion on November 30, 2017. Pros. Answer in Opp'n to Mot. to Vacate J., ECF 10-18. The People contested most of Kaye's arguments, asserting that they each were meritless or procedurally barred, or that they did not warrant vacatur of the judgment. *See generally id.* However, the People conceded that Justice Gary, the sentencing judge, had erred when he relied on incorrect information concerning the contents of Kaye's 2000 plea allocution and asked to set aside the original sentence. *Id.* at 154–57. However, the People also asked that, upon resentencing, Kaye receive the same sentence as he had originally, as modified by the Second Department in 2016 — that is, 28 years. *Id.* at 156 n.15.

Kaye then filed an additional motion pursuant to N.Y. Crim. Proc. L. § 440.20 following the People's response. Pet'r Mot. to Vacate Sentence ("Pet'r First 440.20 Mot."), ECF 10-17.

Kings County Supreme Court Justice William M. Harrington rendered a decision on both of Kaye's Section 440 motions. Decision on Pet'r Mots. dated Dec. 11, 2018, ECF 10-19. The court found Kaye's arguments, pursuant to Section 440.10, that his conviction should be set aside either procedurally barred or substantively meritless. *Id.* at 9–21. However, in light of the People's concession, the court granted the Section 440.20 motion, set aside the sentence, and sent the case back to Justice Gary for resentencing. *Id.* at 21–22.

## V.    2019 Resentencing

At resentencing, Justice Gary began by commenting on the People's agreement to vacate Kaye's original sentence. 2019 Sent'g Tr. at 2:23–3:5 ("[T]he People oppose[d] the motion to set aside the convictions, but consented to vacating the sentence on grounds that I still don't understand what their position was . . . ."); *id.* at 7:14–18 ("Now, I assume the People thought that wasn't a basis for me to use, for some reason or other, in my sentencing. I don't know why. I believe it's because the defendant pled guilty to Endangering the Welfare of a Child, not to a specific sex crime."). The court then stated, "I will consider that prior conviction [from 2000 in Queens County Criminal Court] because of the People's allegation that I used a prior conviction without knowing what the facts were." *Id.* at 5:22–25.

The court then detailed, at some length, its independent research into and analysis of the charges that led to Kaye's 2000 guilty plea, including the allegations

against Kaye and the content of his 2000 allocution before Queens County Criminal Court. *Id.* at 6–12. The court noted that "there are many ways to commit an Endangering the Welfare of a Child" and that, based on the transcript of Kaye's allocution alone, "there is no way to tell what [Kaye] was pleading guilty to in terms of his Endangering the Welfare of a Child, which is why I requested the papers . . . from the Queens D.A.'s Office." *Id.* at 10:9–16. The court also reviewed the criminal complaint in the 2000 Queens case. *Id.* at 10:17–11:21. The court further stated that, "by process of logical reasoning," it was "a fair and reasonable inference from the accusatory instrument and [Kaye]'s allocution" in the 2000 Queens case for the probation officer to include in the 2013 pre-sentence report the statement that, "while employed as a teacher . . . [Kaye] did touch a student's testicles." *Id.* at 11:22–12:5. This analysis culminated in the court's conclusion that, "in this [earlier] case, this Queens case, there is no doubt that the only Endangering the Welfare of a Child that the defendant could plead guilty to constituted sexual abuse of an eight year old child." *Id.* at 12:6–9.

The court then permitted counsel to respond, stating, "if you want to argue that, by all means, you can make that record now and then we will proceed to the sentencing." *Id.* at 12:13–15. Kaye's counsel stated to the court, "while I understand the record you are making and the exhibits that you put into evidence [regarding the 2000 Queens plea], the bottom line is that he pled guilty to Endanger the Welfare of a Child. He did not plead guilty in Queens to a sex-related offense, so I think that that is relevant as well . . . ." *Id.* at 13:10–15. The court then permitted Kaye to

9

speak. *Id.* at 15:8. Kaye also addressed the 2000 Queens plea, stating, "[t]he record that you have read, I mean, I was there, I know what happened at my plea agreement at the sentencing. There was no admission of guilt as to any sexual nature." *Id.* at 16:13–16. Kaye also claimed that the resentencing was the first opportunity that he had to review the presentencing report the court referenced at both the initial sentencing and the resentencing. *Id.* at 18:23–19:2. After hearing from Kaye, the court added to the record a letter from the Queens County District Attorney's Office to the Board of Education, regarding the requirement that Kaye surrender his teaching license, as an additional court exhibit. *Id.* at 22:23–24:22. The court then resentenced Kaye to the same term as the adjusted initial sentencing: 28 years and 90 days incarceration. *Id.* at 24:25–26:4.

**VI.    Kaye's Direct and Collateral Appeals of the 2019 Sentence**

Kaye, both through counsel and *pro se*, filed in 2021 a direct appeal from the resentencing, which was extensively briefed. Pet'r Br. on Second Direct Appeal ("Pet'r Second Appeal Br."), ECF 10-11; Pros. Br. on Second Direct Appeal, ECF 10-12; Pet'r Reply on Second Direct Appeal, ECF 10-13; Pet'r Suppl. Pro Se Br. on Second Direct Appeal ("Pet'r Second Appeal Suppl. Br."), ECF 10-14; Pros. Suppl. Br. on Second Direct Appeal, ECF 10-15. Kaye asserted that the resentencing court relied on inaccurate assumptions about the 2000 plea, *see* Pet'r Second Appeal Br. at 26–33, and imposed an unduly harsh sentence, *id.* at 33–38. The Second Department affirmed. *People v. Kaye*, 176 N.Y.S.3d 678, 679 (N.Y. App. Div. 2022). The appellate court found that "the record does not show that the [resentencing] court relied on any materially incorrect information in imposing the resentence," *id.* at 874 (citations

10

omitted), and "[a] review of the record reveals no retaliation or vindictiveness against the defendant for electing to proceed to trial." *Id.* at 874–75. The Court of Appeals denied Kaye leave to appeal in 2023. *People v. Kaye*, 39 N.Y.3d 1073 (N.Y. 2023).

Meanwhile, Kaye, proceeding *pro se*, filed a second N.Y. Crim. Proc. L. § 440.10 motion in 2020. Pet'r Mot. to Vacate J. ("Pet'r Second 440.10 Mot."), ECF 10-20. The People responded to this motion. Pros. Resp. in Opp'n to Mot. to Vacate J., ECF 10-21. The Kings County Supreme Court denied the motion in 2021. Decision on Pet'r Mots. dated Feb. 23, 2021 ("Second 440.10 Decision"), ECF 10-22. Kaye sought leave to appeal from the Supreme Court's denial, but, by decision and order dated April 21, 2021, the Appellate Division denied leave to appeal. Resp. to Order to Show Cause at 13, ¶ 25, ECF No. 10; Pet. for Writ of Habeas Corpus ("Pet.") Ex. A at 7, ¶ 19, ECF No. 1-2.

## VII.   The Instant Petition

Kaye filed the instant petition on April 3, 2024. Pet., ECF No. 1. Shortly thereafter, Kaye also requested the Court appoint counsel. Ltr. Mot. to Appoint Counsel, ECF No. 5. Kaye initially consented to the jurisdiction of U.S. Magistrate Judge Taryn A. Merkl but later withdrew that consent. *Id.* at 1. The petition was then assigned to this Court. Dkt. Entry dated May 7, 2024.

The Court then ordered Respondent to show cause why a writ of habeas corpus should not be issued. Dkt. Order dated May 21, 2024. Respondent filed its response on September 20, 2024. Resp. to Order to Show Cause, ECF No. 10. Kaye filed a reply on January 15, 2025. Reply to Affirmation in Opp'n to Pet. for Writ of Habeas

Corpus, ECF No. 13.  On February 11, 2025, the Court denied Kaye's motion to appoint counsel without prejudice.  Dkt. Order dated Feb. 11, 2025.

The Court subsequently requested supplemental briefing from Respondent as to the following issues:

> (1) the Kings County District Attorney's concession in response to Petitioner's 2017 CPL 440 motion that the original 2013 sentencing court relied upon incorrect information, and that this error by the sentencing court warranted vacatur of the original sentence, and resentencing, under CPL 440.20;
>
> (2) whether the 2019 resentencing court, in its interpretation of Petitioner's 2000 plea allocution, repeated the conceded error of the original 2013 sentencing court; and
>
> (3) whether, if the Court finds that 2019 resentencing court so erred, the alleged error resulted in a sentence tainted by "misinformation of constitutional magnitude."

Dkt. Order dated Aug. 20, 2025 (citations omitted).  Respondent filed his supplemental brief on September 29, 2025.  Suppl. Resp. to Order to Show Cause ("Suppl. Resp."), ECF No. 17.  The Court permitted Kaye to file a supplemental reply brief as well, Dkt. Order dated Oct. 20, 2025, which he did on November 13, 2025, Pet'r Answer to Resp. Suppl. Mem. of L., ECF No. 20.

## LEGAL STANDARD

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") generally requires a petitioner to have exhausted his state court remedies prior to filing his petition for writ of habeas corpus.  28 U.S.C. § 2254(b)(1).  "Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts," a habeas petitioner must give the state the chance to review his claims by invoking

"one complete round" of an available state judicial review procedure. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). "The petitioner may satisfy this requirement with respect to a particular claim either by completing a full round of direct appellate review that includes that claim, or a full round of state post-conviction review that includes that claim." *Safran v. New York*, No. 22-CV-3177 (NRM), 2023 WL 3306932, at *2 (E.D.N.Y. May 6, 2023) (citing *Harvey v. Portuondo*, 98-CV-7371 (JG), 2002 WL 2003210, at *5 (E.D.N.Y. Aug. 5, 2002)). Section 2254 provides only narrow exceptions to the exhaustion requirement. 28 U.S.C. § 2254(b)(1)(B)(i), (ii) (providing that federal courts may hear unexhausted claims where "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant").

In considering the merits of exhausted habeas claims, the AEDPA "imposes a 'highly deferential standard for evaluating state-court rulings.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997)). To grant habeas relief, the federal court must find that the state courts' adjudication of the habeas claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). "Clearly established federal law," for purposes of Section 2254, "refers to the holdings, as opposed to the dicta, of [United States Supreme Court] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[A] federal habeas court may not grant relief simply because it concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 365. The AEDPA "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and "requires 'a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'" *Burt v. Titlow*, 571 U.S. 12, 19–20 (2013) (alterations in original) (citation omitted).

## DISCUSSION

In his petition, Kaye raises 22 grounds relating to his 2019 sentence. Pet. at 8–47. These grounds fall into three separate categories of claims. One ground asserts the claim that the "estoppel doctrine precluded the People" from arguing at the 2019 sentencing that the court should impose the same sentence that it had imposed at the 2013 initial sentencing. *Id.* at 32–33 (Ground Fifteen). Seven grounds assert the claim that his 2019 sentence is excessive and vindictive. *Id.* at 13–16, 21–22, 25–26, 40–47 (Grounds Five, Six, Nine, Eleven, Nineteen, Twenty, and Twenty-One). Fifteen grounds assert the claim that the sentencing court relied on materially false information concerning Kaye's 2000 plea to one count of endangering the welfare of a child. *Id.* at 8–13, 17–21, 22–31, 33–39, 45–47 (Grounds One, Two, Three, Four, Seven, Eight, Ten, Eleven, Twelve, Thirteen, Fourteen, Sixteen, Seventeen, Eighteen,

and Twenty-Two). Each of these three claims is addressed below, beginning by considering whether the claims were properly exhausted in state court.

## I.    Kaye Exhausted Two Claims but Failed to Exhaust the Third Claim

On his direct appeal from the 2019 sentence, Kaye asserted that (1) "the [2019 sentencing] court's reliance on material and mistaken assumption of fact during sentencing denied [Kaye] his right to due process" and, therefore, his sentence should be vacated and remitted for resentencing, Pet'r Second Appeal Br. at 32–33; *see also id.* 26–33 (developing this argument); and (2) Kaye's "[2019] sentence was retaliatory, vindictive, and unduly harsh under the circumstances," *id.* at 33; *see also id.* at 33– 38 (developing this argument).

It is well established that a petitioner seeking habeas relief need not recite "chapter and verse" of United States Constitution to exhaust a federal constitutional claim. *Ramirez v. Att'y Gen.*, 280 F.3d 87, 95 (2d Cir. 2001) (citing *Daye v. Att'y Gen.*, 696 F.2d 186, 194 (2d Cir. 1982) (en banc)). As the *Daye* Court explained,

> "[T]he ways in which a state defendant may fairly present to the state courts the constitutional nature of his claim . . . include (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

696 F.2d at 194.

Here, as to Kaye's claim that the sentencing court violated his right to due process by relying on purported misinformation, Kaye expressly stated during his state court litigation that his claim was raised under the Fifth and Fourteenth

Amendments to the United States Constitution.  Pet'r Second Appeal Br. at 26. Similarly, Kaye's claim that his 2019 resentence was "retaliatory, vindictive, and unduly harsh under the circumstances" is sufficiently particular to state at least two federal constitutional claims.  *See Wasman v. United States*, 468 U.S. 559, 564 (1984) ("Due process of law [] requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." (quoting *North Carolina v. Pearce*, 395 U.S. 711, 725 (1969))); *Carrion v. Singh*, No. 12-CV-0360 (JFB), 2013 WL 639040, at *7 (E.D.N.Y. Feb. 21, 2013) ("[T]he Eighth Amendment bans excessive prison terms that are 'grossly disproportionate' to the crime committed." (quoting *Lockyer v. Andrade*, 538 U.S. 63, 72–73 (2003))).  Kaye's supplemental *pro se* brief also raised relevant federal caselaw, *see* Pet'r Second Appeal Suppl. Br. at 37 (invoking the vindictiveness doctrine of *Pearce*, 395 U.S. 711), and expressly referenced a federal constitutional right, *id.* at 45 (discussing "two kinds of excessiveness that may invalidate a sentence under the 8th Amendment").

Because both these arguments were raised and litigated during Kaye's direct appeal up to the denial of leave to appeal by the New York Court of Appeals, these claims are exhausted, and the Court may reach their merits.  *See O'Sullivan*, 526 U.S. at 845.

However, Kaye's third claim, that the "estoppel doctrine precluded the People" from arguing at the 2019 sentencing that the court should impose the same sentence that it had imposed at the 2013 initial sentencing, was never raised below and is

unexhausted. Moreover, this argument does not fall into either exception to the exhaustion requirement contained in the AEDPA. Though Kaye asserts that "[a]ssigned appellate counsel failed to raise [this claim] at the time," Kaye himself was permitted by the Appellate Division to file a *pro se* supplemental brief on his direct appeal. Pet'r Second Appeal Suppl. Br. at 2. This "estoppel doctrine" argument appears nowhere in Kaye's *pro se* supplemental brief. *See generally id.* Nor did Kaye raise this claim in his second Section 440.10 motion. *See generally* Second 440.10 Decision. Kaye enjoyed the rights to both direct and collateral appeals of his 2019 resentence and, availing himself of these rights, simply did not raise this claim. It cannot be said that there was an "absence of available State corrective process," 28 U.S.C. § 2254(b)(1)(B)(i), and nothing in the record suggests that "circumstances exist that render such process ineffective to protect the rights of the applicant," *id.* § 2254(b)(1)(B)(ii).

A "mixed petition" containing both exhausted and unexhausted claims "must generally be dismissed, 'leaving the prisoner with the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims to the district court.'" *Keating v. New York*, 708 F. Supp. 2d 292, 299 (E.D.N.Y. 2010) (quoting *Rose v. Lundy*, 455 U.S. 509, 510 (1982)). However, a district court may still reach the merits of an unexhausted claim and deny it. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *cf. Rhines v. Weber*, 544 U.S. 269, 270

(2005) (holding that, "[e]ven if good cause existed [for a petitioner's failure to exhaust a claim], the district court would abuse its discretion if it granted a stay when the unexhausted claims are plainly meritless").

Here, Kaye has cited no authority, and the Court is not aware of any, that stands for the proposition that the People, after conceding an error in the original sentencing, are precluded from advocating at resentencing that the sentencing court impose the same term as the initial sentence. Accordingly, the Court finds no basis for habeas relief in Kaye's "estoppel doctrine" claim, and the Court denies that claim on the merits.

## II.  Kaye is Not Entitled to Habeas Relief on His Claim That His 2019 Sentence Is Unconstitutionally Excessive or Vindictive

Kaye argues that his 2019 sentence of four consecutive seven-year terms and one consecutive 90-day term is excessive and vindictive. Pet. at 13–16, 21–22, 25–26, 40–47. Under either claim (*i.e.*, excessiveness or vindictiveness), however, Kaye does not meet the high bar that would entitle him to federal habeas relief.

### A.  Excessive Sentence

In the Second Circuit, "it is well settled that a sentence imposed within the limits of a statute cannot amount to cruel and unusual punishment [in violation of the Eighth Amendment], and that when a statute provides for punishment thought to be violative of the amendment the constitutionality of the statute itself must be attacked." *Fabian v. Phillips*, No. 05-CV-0658 (NGG), 2007 WL 1232071, at *5 (E.D.N.Y. Apr. 26, 2007) (quoting *United States v. Dawson*, 400 F.2d 194 (2d Cir.

1968)).  Kaye does not claim that the statute under which he was sentenced is unconstitutional; he simply asserts that its application to him was excessive.

Here, the sentencing court sentenced Kaye to the maximum term of imprisonment that was within the statutory limits.  N.Y. Penal L. § 130.80 ("Course of sexual conduct against a child in the second degree is a class D felony."); *id.* § 130.65 ("Sexual abuse in the first degree is a class D felony."); *id.* § 70.00(2)(d) ("For a class D felony, the term shall be fixed by the court, and shall not exceed seven years."); *id.* § 130.55 ("Sexual abuse in the third degree is a class B misdemeanor."); *id.* § 70.15 ("A sentence of imprisonment for a class B misdemeanor shall be a definite sentence . . . and shall not exceed three months.").  New York law also grants sentencing courts discretion to impose either concurrent or consecutive sentences. N.Y. Penal L. § 70.25(1).  The Appellate Division modified Kaye's original sentence so that the convictions for counts two and three would run concurrently "because the offenses charged in those counts were committed through a single act," *Kaye*, 26 N.Y.S.3d at 595 (citation modified), and the court at resentencing followed this decision, 2019 Sent'g Tr. at 25:23–24 ("Counts two and three are to run concurrently with each other as mandated by the Appellate Division.").  The court's decision that the other sentences would run consecutive to counts two and three and to each other was within its discretion.

## B.    Vindictiveness

Kaye's claim that his sentence was unconstitutionally vindictive is also unavailing, although not as obviously so.  The court at resentencing imposed the same

sentence it had imposed at the initial sentencing, as modified by the Appellate Division. "[T]he [*Pearce*] presumption of vindictiveness does not apply where the penalty imposed on resentencing is the same as the original sentence." *Wright v. Bell*, No. 18-CV-2222 (PKC), 2021 WL 3634778, at *5 (E.D.N.Y. Aug. 17, 2021). "Where the *Pearce* presumption does not apply, 'the defendant must affirmatively prove actual vindictiveness.'" *Id.* (quoting *United States v. Singletary*, 458 F.3d 72, 76 (2d Cir. 2006). "[T]he mere fact that the sentence imposed following trial is greater than the offer made during plea negotiations[] does not indicate that a petitioner has been punished for exercising his right to proceed to trial." *Moore v. Att'y Gen.*, No. 17-CV-0474 (JFB), 2019 WL 3717580, at *18 (E.D.N.Y. Aug. 7, 2019) (citation omitted).

It is true that Kaye has identified statements by the sentencing judge that raise serious concerns about whether he was punished at sentencing for having exercised his constitutional right to a jury trial. At the initial 2013 sentencing, the court stated:

> I remind you, Mr. Kaye, way back when this case was sent to me for trial, we discussed mercy, and I said to you, Mr. Kaye, on the issue of mercy I would offer you a sentence of 10 years to spare these children from having to go forward, and to testify in open court in front of strangers about what happened to them and you rejected that, so mercy is by the boards, Mr. Kaye.

2013 Sent'g Tr. at 19:13–20. The same judge then explicitly incorporated and reaffirmed these statements from the 2013 sentencing during the 2019 resentencing. 2019 Sent'g Tr. at 6:17–23 ("I'm not going to repeat what I said when I initially

sentenced the defendant. Everything that I said then, as far as I'm concerned, is equally in effect at this point in time.").[5]

These comments by the sentencing court were plainly intemperate, and it is not unreasonable to conclude — as Kaye argues here — that the sentencing court imposed a longer sentence on Kaye in both 2013 and at his resentencing in 2019 because Kaye chose to exercise his right to a trial by jury. *See Brewster v. People of State of New York*, No. 08-CV-4653 (JFB), 2010 WL 92884, at *10 (E.D.N.Y. Jan. 6, 2010) ("The Sixth Amendment guarantees the right to a trial by jury, and a state may not penalize a person for exercising a right guaranteed under the Constitution." (citing *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978))). The record certainly raises concerns, in this Court's view, that Kaye's 2019 sentence may have been infected by

---

[5] Several facts distinguish this case from comparable cases where district courts acknowledged vindictiveness in an initial state court sentence but declined to grant habeas relief because those constitutional infirmities were cured through the state appellate process. *See, e.g.*, *Simmons v. Brown*, No. 08-CV-01425 (JFB), 2011 WL 2133844, at *19–21 (E.D.N.Y. May 26, 2011). The 2019 sentencing court's incorporation and affirmation of its 2013 statements means that Kaye's vindictiveness claim here is directed towards the 2019 resentence imposed by the sentencing court, not the initial sentence as modified by the Appellate Division. *Cf. id.* at *20 ("[P]etitioner's arguments reference only the *trial* court's statements; he says nothing to indicate that the Appellate Division's modified sentence — which is the sentence petitioner is currently serving — is vindictive."). Moreover, the Appellate Division's modification of Kaye's original 2013 sentence — adhered to by the 2019 sentencing court — was based on the sentencing court's failure to abide by the requirement of Penal Law Section 70.25(2) that sentences for multiple offenses arising out of a single act run concurrently. *Kaye*, 26 N.Y.S.3d at 595. This contrasts again with *Simmons*, where the Appellate Division reduced the petitioner's sentence by ten years after finding that the original sentence was vindictive, and the petitioner was attacking the reduced sentence as itself vindictive. 2011 WL 2133844, at *20. In short, to the extent Kaye's 2019 sentence may be vindictive, this error has not been corrected by a state court.

constitutionally impermissible vindictiveness on the part of the sentencing judge and that Kaye was explicitly punished for exercising his right to a trial by jury.

However, this Court's "independent judgment" is insufficient to grant the habeas relief that Kaye seeks. *See Williams*, 529 U.S. at 403–05. Kaye's vindictiveness claim is a close call. Ultimately, this Court does not find that the Appellate Division, in the brief passage of its opinion concluding that "[a] review of the record reveals no retaliation or vindictiveness against [Kaye] for electing to proceed to trial," *Kaye*, 176 N.Y.S.3d at 680, was applying "clearly established federal law" in an "objectively unreasonably" manner, *Williams*, 529 U.S. at 409 Accordingly, given the "highly deferential standard" imposed by the AEDPA on district courts' review of state court decisions, *Lindh*, 521 U.S. at 333 n.7, this Court does not have the authority to grant habeas relief on this claim.

## III. The 2019 Sentencing Court Did Not Rely on Misinformation of a Constitutional Magnitude and Offered Kaye the Opportunity to Reply in Imposing the 2019 Sentence

Kaye also argues that the 2019 sentencing court relied on material misinformation in imposing his sentence. Pet. at 8–13, 17–21, 22–31, 33–39, 45–47. The Court finds that Kaye's sentence was not impacted by misinformation of constitutional magnitude, and, moreover, the sentencing court provided Kaye the opportunity to reply to its conclusions regarding Kaye's 2000 guilty plea. For these reasons, the sentencing court did not violate Kaye's right to due process, and this Court denies Kaye's requested habeas relief.

The Supreme Court has stated that "the careless or designed pronouncement of sentence on a foundation so extensively and materially false, which the prisoner

had no opportunity to correct by the services which counsel would provide, [] renders the proceedings lacking in due process." *Townsend v. Burke*, 334 U.S. 736, 741 (1948). *Townsend* arose from a specific circumstance where the defendant had been denied counsel in the underlying state proceeding, *id.* at 740–41, and the Court subsequently affirmed its holding in a case where the sentencing court relied upon three prior convictions, two of which had been invalidated on constitutional grounds. *United States v. Tucker*, 404 U.S. 443 (1972).[6] The *Tucker* Court concluded that it was dealing, "not with a sentence imposed in the informed discretion of the trial judge, but with a sentence founded at least in part upon misinformation of constitutional magnitude." 404 U.S. at 447. The Court noted that "this prisoner was sentenced on the basis of assumptions concerning his criminal record which were materially untrue," *id.* (quoting *Townsend*, 334 U.S. at 741), and concluded that "[t]he record in the present case makes evident that the sentencing judge gave specific consideration to the respondent's previous convictions [two of which were wholly unconstitutional under *Gideon v. Wainwright*, 372 U.S. 335 (1963)]," *id.* Later cases clarify the boundaries of this doctrine. *See United States v. Addonizio*, 442 U.S. 178, 186–87

---

[6] *Tucker* concerned a habeas petition under 28 U.S.C. § 2255, not a petition, like Kaye's, brought under 28 U.S.C. § 2254. However, the AEDPA expressly provides that, under Section 2254, the district court must evaluate whether the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts in this circuit have discussed *Townsend* and *Tucker* in tandem when considering whether misinformation or a materially false factual foundation rendered a sentence constitutionally infirm. *See McCool v. New York State*, 29 F. Supp. 2d 151, 162 (W.D.N.Y. 1998) (discussing these two cases together). This Court considers Section 2254 and Section 2255 cases equally persuasive in evaluating Kaye's constitutional claim, despite their differing procedural postures.

(1979) (the "misinformation of constitutional magnitude" doctrine was not implicated where "the judge was incorrect in his assumptions about the future course of parole proceedings"); *Roberts v. United States*, 445 U.S. 552, 557 (1980) (finding "no such misinformation [of constitutional magnitude]" where the "sentencing court relied upon essentially undisputed facts," including "that petitioner rebuffed repeated requests for his cooperation over a period of three years"); *Zant v. Stephens*, 462 U.S. 862, 887 n.23 (1983) (citing *Tucker* for the proposition that, "even in a noncapital sentencing proceeding, the sentence must be set aside if the trial court relied at least in part on 'misinformation of constitutional magnitude'"); *Custis v. United States*, 511 U.S. 485, 496 (1994) (declining to extend the logic of *Tucker* to permit collateral attacks against prior state court convictions under the Armed Career Criminal Act of 1984, 18 U.S.C. § 924(e)); *but see id.* at 506 n.5 (Souter, J., dissenting) (arguing that *Zant* "clearly indicat[es] an understanding that *Tucker* was not limited to *Gideon* violations").

The Second Circuit has recognized that defendants have a "due process right to be sentenced based on accurate information." *United States v. Doe*, 938 F.3d 15, 19 (2d Cir. 2019) (first quoting *United States v. Juwa*, 508 F.3d 694, 700 (2d Cir. 2007); then citing *Tucker*, 404 U.S. at 447; and then citing *United States v. Brown*, 843 F.3d 74, 91 (2d Cir. 2016) (Pooler, J., dissenting)); *see also Brown*, 843 F.3d at 91 (Pooler, J., dissenting) ("Defendants have a constitutional right to be sentenced based

on 'accurate information' rather than guesses.").[7]  A sentencing court's "material misapprehension of fact" is especially objectionable "when the defendant lacks an opportunity to reply." *Doe*, 938 F.3d at 19 (quoting *United States v. McDavid*, 41 F.3d 841, 843–44 (2d Cir. 1994)).  However, the sentencing court must actually rely on inaccurate information; its "mere existence" does not precipitate a due process violation.  *United States v. Arevalo*, 628 F.3d 93, 99 (2d Cir. 2010).

The holding of *United States v. Malcolm*, 432 F.2d 809, 816 (2d Cir. 1970), is instructive.  In *Malcolm*, the Second Circuit stated that "[m]isinformation or misunderstanding that is materially untrue regarding a prior criminal record, or material false assumptions as to any facts relevant to sentencing, renders the entire sentencing procedure invalid as a violation of due process," 432 F.2d at 816 (citing *Townsend*, 334 U.S. at 740–41), though "[n]ot every defect in the sentencing process[] is of constitutional dimension," *id.*  The defendant in *Malcolm* had participated in five armed robberies, all involving a gun, but had pled guilty only to two, one of which was reduced to petty larceny, and had voluntarily disclosed his role in the others.  *Id.*  The sentencing court, however, heavily emphasized during the sentencing that defendant had committed five armed robberies.  *Id.*  The defendant also provided the police with information relating to the murder of a police officer and several robberies, but the sentencing court refused to believe this mitigating information.  *Id.* at 816–17.

---

[7] Though *Doe*, *Juwa*, and *Brown* concerned direct appeals from sentences imposed by federal district courts, like the Section 2255 cases discussed *supra*, this Court considers them probative of the constitutional right Kaye invokes in his petition under Section 2254.

In granting relief, the *Malcolm* Court also relied heavily on the fact that "the judge constantly interrupted and effectively curtailed and precluded not only defendant but even the prosecutor from presenting information highly material to mitigation of punishment." *Id.* at 819. "Worse," the *Malcolm* Court found, "no one had an adequate opportunity to clear up [the judge's] confused version of [defendant]'s criminal record or to dispel [the judge's] disbelief and explain the scope and significance of [defendant]'s cooperation." *Id.* The *Malcolm* Court concluded "that the combination of procedural irregularities, confusion, misunderstanding and misinformation in the sentencing process" violated due process and required reversal and remand for resentencing.

Looking to persuasive authority, other circuits have articulated a two-part test derived from *Townsend* and *Tucker* for determining when misinformation during sentencing violates due process: (1) the information before the sentencing court was inaccurate, and (2) the sentencing court demonstrably relied on that misinformation in determining the sentence. *See, e.g.*, *U.S. ex rel. Welch v. Lane*, 738 F.2d 863, 865– 67 (7th Cir. 1984) (finding misinformation and reliance where the sentencing court believed defendant had a prior conviction for armed robbery but the conviction was in fact only for robbery); *id.* at 865 n.3 (adding that "due process also requires that, where the sentencing court relies on information of contested accuracy, the defendant must have some meaningful opportunity to rebut the information"); *United States v. Eakman*, 378 F.3d 294 (3d Cir. 2004) (articulating the test as "whether (1) the district court made an objectively ascertainable error (one that does not require courts to

probe the mind of the sentencing judge) and (2) the district court materially relied on that error in determining the appropriate sentence").

Here, however, the 2019 sentencing court did not rely on a material misapprehension of fact or objectively ascertainable error. As the sentencing court made clear on the record, the information it considered included the facts that: (1) the 2013 pre-sentence report stated that, "[w]hile employed as a teacher at a Hebrew school, the defendant did touch a student's testicles," 2019 Sent'g Tr. at 7:2–13; (2) in 2000, Kaye pled guilty to one count of Endangering the Welfare of a Child, *id.* at 6:5–7, 8:16–19; (3) during that plea, Kaye admitted he "committed the crime of Endangering the Welfare of a Child, when [he] knowingly acted in a manner likely to be injurious to the physical, mental or moral welfare of a child less than 17 years old, *id.* at 9:25–10:8; and (4) the Queens criminal court complaint in the 2000 case stated that Kaye "did place his hands on the complainant's testicles," "did place his finger in the complainant's anus," and that the complainant "is eight years old," *id.* at 10:19–11:21. The sentencing court noted that "there are many ways to commit an Endangering the Welfare of a Child" and that, "[b]ased upon [the 2000 sentencing transcript alone], there is no way to tell what the defendant was pleading guilty to." *Id.* at 10:9–14. However, the sentencing court concluded that the probation officer who wrote the pre-sentence investigation report made "a fair and reasonable inference from the accusatory instrument and the defendant's allocution" that Kaye "did touch a student's testicles." 2019 Sent'g Tr. at 11:22–12:5. The court further concluded that, "[in] this Queens case, there is no doubt that the only Endangering

27

the Welfare of a Child [charge] that the defendant could plead guilty to constituted sexual abuse of an eight year old child." *Id.* at 12:6–9.

In contrast, in 2013, the sentencing court stated that, in his 2000 guilty plea, Kaye "*admitted* that [he] personally had molested a child," 2013 Sent'g Tr. at 19:24–25 (emphasis added), and that Kaye "*admitted* doing this type of behavior," that is, sexually abusing minors, *id.* at 21:13–14 (emphasis added). Respondent has "conceded that [Kaye] ha[s] correctly noted that, in his guilty plea in 2000, he did not admit to molesting a child and that, in sentencing defendant the [2013] sentencing court had relied upon 'materially untrue assumptions or misinformation,'" requiring that Kaye be resentenced. Suppl. Resp. at 4. On the other hand, Respondent contends that, in 2019, "the resentencing court properly based its sentence upon the pre-sentence report that noted the sexual nature of the endangering *charge*, and the court verified the accuracy of the notation by reading the criminal complaint in the 2000 Queens case which alleged sexual misconduct against [] a child as the sole basis of the endangering charge." *Id.* at 6–7 (emphasis added).

The Court agrees with Respondent that this a significant distinction. The sentencing court's misapprehension in 2013 that Kaye "admitted" to sexually abusing a child in 2000, and its explicit reliance on that misapprehension, was a major error. The People recognized this when it conceded the error and requested that Kaye be resentenced. Certainly, the 2019 sentencing court's displeasure with the People's concession is apparent from the transcript. However, the court proceeded to explain what evidence and facts it used to arrive at its conclusions concerning the pre-

28

sentence report and the 2000 charge to which Kaye pled guilty. Sentencing courts are "not so narrowly restricted in imposing sentence that [they] cannot predicate sentence on habitual misconduct, whether or not it resulted in convictions[ and they] may exercise a wide discretion in the sources and types of information used to assist [them] in determining an appropriate, just and enlightened sentence." *Malcolm*, 432 F.2d at 816.

Further, rather than relying on an explicit misapprehension about a non-existent admission by Kaye as to certain conduct, as it did in 2013, the 2019 sentencing court relied on a reasonable inference drawn from other evidence in the record concerning Kaye's 2000 guilty plea. "[A] sentencing court, like a jury, may base its factfinding on circumstantial evidence and on reasonable inferences drawn therefrom." *United States v. Gaskin*, 364 F.3d 438, 464 (2d Cir. 2004); *see also United States v. Barbee*, No. 23-6049-CR, 2024 WL 2174173, at *2 (2d Cir. May 15, 2024) (summary order) (noting that a sentencing court may draw reasonable inferences from the relevant circumstances, including from an "allocution alone" (citing *United States v. Velez*, 357 F.3d 239, 243 (2d Cir. 2004))). The 2019 sentencing court based its inference not only on the 2000 allocution and the accusatory instrument, but also on the facts that, as conditions of the 2000 plea, Kaye enrolled in the CAPS program for sexual offenders and was required to surrender his New York State teaching license. 2019 Sent'g Tr. at 12:21–13:5, 24:4–9. Accordingly, the 2019 sentencing court's conclusion was not based on material misinformation. This is especially clear given that Kaye only denied that he *admitted* to sexually abusing a child at his 2000

plea hearing — yet when given an opportunity to address the resentencing court about the conduct that supported his guilty plea, Kaye did not deny that he committed any of the acts alleged in that indictment.

Finally, while the Court does not find that the 2019 sentencing court's conclusions about Kaye's 2000 guilty plea involved any material misinformation, the sentencing court provided Kaye the opportunity to challenge the information upon which the court intended to rely with respect to that plea before imposing sentence. 2019 Sent'g Tr. at 12:13–15 ("Counsel, if you want to argue that, by all means, you can make that record now and then we will proceed to sentencing."). Kaye availed himself of this opportunity, both through counsel and personally. *Id.* at 13:11–14 (statement of Kaye's counsel that "the bottom line is that [Kaye] pled guilty to Endangering the Welfare of a Child [but] did not plead guilty in Queens to a sex-related offense"); *id.* at 16:13–16 (Kaye's statement that "I was there, I know what happened at my plea agreement at the sentencing. There was no admission of guilt as to any sexual nature"). While the 2019 sentencing court did interrupt Kaye several times during his statement, this Court has reviewed the entirety of the resentencing transcript and finds that these interruptions did not deprive Kaye of a fair opportunity to be heard on that issue before sentence was imposed. *See Phan v. McCoy*, No. 94-CV-1596 (RSP) (GJD), 1997 WL 570690, at *3 (N.D.N.Y. Aug. 28, 1997) (due process satisfied where defendant was afforded opportunity to challenge assumptions in pre-sentence report) (adopting report and recommendation); *cf. Malcolm*, 432 F.2d at 818–19 (holding that interruptions rise to the level of

30

procedural irregularities where they "effectively curtail[] and preclude[]" the transmission of relevant information meant to address a court's confusion).

Because Kaye's 2019 sentence was not predicated on materially false information or assumptions, and because, before his sentence was imposed, Kaye was provided an opportunity to address the factual matters raised by the sentencing court that he now characterizes as misapprehensions, the Court may not grant Kaye's requested habeas relief on the basis that the sentence was impacted by misinformation of constitutional magnitude.

## CONCLUSION

For the foregoing reasons, Kaye's petition for a writ of habeas corpus is denied. However, because Kaye has made a substantial showing that his 2019 sentence was tainted by unconstitutional vindictiveness, the Court grants Kaye a certificate of appealability with respect to that claim. 28 U.S.C. § 2253(c)(2) (providing that a district court should issue a certificate of appealability if the petitioner has "made a substantial showing of the denial of a constitutional right"); *see also Tennard v. Dretke*, 542 U.S. 274, 282 (2004) ("[Section 2253(c)(2)] require[s] that the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." (citation modified)).

SO ORDERED.

       /s/ Nina R. Morrison
NINA R. MORRISON
United States District Judge

Dated: January 21, 2026
    Brooklyn, New York